## SCOTT *et al.* v. McGIRTH.

No. 3102.    Opinion Filed February 28, 1914.

(139 Pac. 519.)

1.    COURTS—Transfer of Jurisdiction of Territorial Court—Proceedings to Set Aside Will. A proceeding to probate a will pending in the United States Court at Wewoka, at the time of the admission of the state into the Union, which was transferred to the district court of Seminole county, and by such court transferred to the county court of Seminole county, and by that court transferred to the county court of Hughes county, and was pending in said last named court when a petition to set aside the probate of the will was filed; held, that the county court of Hughes county is the successor in probate matters of the United States Court for the Western District of the Indian Territory, and the proper court in which to file a petition to set aside the probate of a will, probated in the United States Court for the Western District of the Indian Territory, at Wewoka.

Statement of Facts.

2.  SAME—Jurisdiction—Probate Matters. A county court coextensive with the county is a court of original jurisdiction in all probate matters.

3.  SAME—Transfer of Jurisdiction—Records and Files.  The courts of original jurisdiction in this state are deemed to be the successors of all courts of original jurisdiction of the territories, and as such take and retain custody of all records, documents, journals, and files of such territorial courts.

4.  WILLS — Contests — Infants—Diligence—Statutes.  In construing section 5166, Comp. Laws 1909 (Rev. Laws 1910, sec. 6219), as applied to infants and persons of unsound mind, said section must be read and construed in connection with section 5172, Comp. Laws 1909 (Rev. Laws 1910, sec. 6225), and when so read and construed it seems clear that the latter section relieves an infant of the diligence required of adults, under section 5166, to contest the probate of a will within one year, or to show that the evidence relied upon was discovered since the probate of the will.  Section 5172 gives an infant a right to contest the probate of a will upon either or all of the four grounds specified in said section 5166, free from conditions precedent in respect to diligence specified in said last section.

5.  SAME—Proceeding to Set Aside Probate of Will—Objections. Where a petition to set aside the probate of a will, under section 5166, supra, Comp. Laws 1909, is neither signed nor verified, the remedy is by motion to strike the petition from the files, and not by general demurrer.

6.  SAME—Appeal—Objection Below.  An objection for want of signature or verification to a petition to set aside the probate of a will cannot be raised for the first time on appeal.

(Syllabus by Rittenhouse, C.)

*Error from District Court, Hughes County;*
*John Caruthers, Judge.*

Action by Lena McGirth, by her guardian, Felix P. Canard, against Evans Scott and Alexander M. Butts.  Judgment for plaintiff overruling demurrer, and defendants bring error.  Affirmed.

The plaintiffs in error filed in the United States Court for the Western District of the Indian Territory, at Wewoka, a will, purporting to be the last will and testament of Mongy McGirth, deceased, who died at Holdenville, Ind. T., on the 17th day of June, 1910, in what is now Hughes county, Okla.  The will was probated, and the plaintiffs in error were appointed executors under said will.  Wewoka was the nearest town to the

place of the death of the said Mongy McGirth where a United States Court was held. After statehood the cause was transferred to the district court of Seminole county, Okla., and from that court to the county court of Seminole county, and from said court of Seminole county to the county court of Hughes county, Okla. The defendant in error filed a petition to set aside the probate of the alleged will of Mongy McGirth in the county court of Hughes county, Okla., the date of which does not appear from the records, which petition alleges that Felix P. Canard is the legally appointed and acting guardian of Lena McGirth, an infant of the age of four years, and that the infant is the only surviving child of Mongy McGirth, deceased; that the said Mongy McGirth was a full-blood Creek Indian and a citizen of the Creek Nation, and died some time in the month of June, 1907, in what is now Hughes county, state of Oklahoma, and left surviving him his widow and Lena McGirth, an only child; that a very short time before the death of Mongy McGirth a paper was executed, signed, and witnessed, which pretended to be the last will and testament of the said Mongy McGirth; that the said pretended will was afterwards filed and admitted to probate in the United States Court for the Western District of the Indian Territory, at Wewoka; that the said Mongy McGirth by said pretended will altogether disinherited his wife, and deprived her of her dower interest in said estate, and left but a small portion of said property to Lena McGirth, his only child, and left the bulk of his property to Evans Scott and Alexander M. Butts, both white men, strangers to him in blood, and who were his physicians attending him in his last sickness at the time the said pretended will was made; that at the time the said pretended will was made the said Mongy McGirth was on his death bed, and was so worn out with pain and suffering that he was incapable of transacting any business whatever, was *in extremis*, and wholly lacking in testamentary· capacity; that the said pretended will was made while the said Mongy McGirth was under duress of the said plaintiffs in error, and was obtained by them through duress, undue influence, and fraud; that the said pretended will was prepared by the said plaintiffs in error of their

own volition, and was not dictated or suggested by the said
Mongy McGirth; that the same was not read over to him before
his pretended signature or mark was affixed thereto; that there
was no one present who could read the said will in English, and
interpret the same to Mongy McGirth in Creek, and that the said
Mongy McGirth could neither talk nor understand the English
language, and that he had no knowledge whatever of the con-
tents of the said pretended will, and that said pretended will
was signed and witnessed at the earnest solicitation and request
of the said plaintiffs in error for the purpose of obtaining the
property of the said Mongy McGirth, and depriving his wife
and child of same; that said pretended will was not executed in
accordance with the laws then in force in the Indian Territory
as to the making and execution of wills, and could not vest any
rights of property in the devisees therein named; and prays that
the will be revoked and canceled, and held for naught, and that
the probate of same be set aside.

This petition was not signed or sworn to, nor was any motion
to dismiss for that reason ever filed. The plaintiffs in error filed
a demurrer, which was by the court overruled, and exceptions
allowed, and the case is brought here for review on transcript.

*Warren & Miller,* for plaintiffs in error.

*B. T. Buchanan, W. W. Witten,* and *B. N. Hicks,* for de-
fendant in error.

Opinion by RITTENHOUSE, C. (after stating the facts as
above). The first question raised by the demurrer is "that the
court has no jurisdiction of the subject-matter of the action, in
that it affirmatively appears from the face of the petition that the
said will was probated in the United States Court for the West-
ern District of the Indian Territory, sitting at Wewoka, Ind. T.,
and therefore this court has no jurisdiction to try said petition
for revocation under the law." It is argued very extensively
that the county court of Hughes county is not the successor of
the United States Court for the Western District of the Indian
Territory in probate matters, and therefore the contest in this

cause was not filed in the court in which the will was proved, as required by section 5166, Comp. Laws 1909 (Rev. Laws 1910, sec. 6219). The will was probated in the United States Court at Wewoka, and after statehood the cause was transferred to the district court of Seminole county under section 27 of the Schedule of the Constitution, which provides:

"All cases, civil and criminal, pending, at the time of the admission of the state into the Union, in the district courts of the territory of Oklahoma, in any county within the district, and the records, papers, and proceedings of said district court, and the seal and other property appertaining thereto, shall be transferred into the district court of the state for such county, except as is provided in the Enabling Act of Congress, and all cases, civil and criminal, pending, at the time of the admission of the state into the Union, in the United States Court for the Indian Territory, within the limits of any county created in whole or in part within the limits of what was heretofore the Indian Territory, and all records, papers, and proceedings of said United States Courts for the Indian Territory, and the seal and other property appertaining thereto, shall be transferred to the district court of the state for such county, except as is provided in the Enabling Act of Congress and the amendments thereto: Provided, that the Legislature may provide for the transfer of any such cases from one county to another county."

Afterwards the district court of Seminole county transferred said cause to the county court of the same county, under section 23 of the Schedule of the Constitution, which provides:

"When this Constitution shall go into effect, the books, records, papers, and proceedings of the probate court in each county, and all causes and matters of administration and guardianship, and other matters pending therein, shall be transferred to the county court of such county, except of Day county, which shall be transferred to the county court of Ellis county, and the county courts of the respective counties shall proceed to final decree or judgment, order, or other termination in the said several matters and causes as the said probate court might have done if this Constitution had not been adopted. The district court of any county, the successor of the United States Court for the Indian Territory, in each of the counties formed in whole or in part in the Indian Territory, shall transfer to the county court of such county all matters, proceedings, records, books, papers, and documents appertaining to all causes or proceedings relating

to estates: Provided, that the Legislature may provide for the transfer of any of said matters and causes to another county than herein prescribed."

Under the provisions of section 27, *supra,* of the Schedule, the Legislature of Oklahoma passed the following act:

Section 536, Comp. Laws 1909:

"That all those civil cases transferred from the courts of the territory of Oklahoma and the United States Courts in the Indian Territory to the courts of this state, as transferred by acts of Congress and accepted by the Constitution, which would have been properly triable in any court, or county or district of this state, had such suit or proceeding been commenced after the admission of this state into the Union, including records formerly belonging to the United States Commissioners' Courts and all papers of mayors of cities and incorporated towns having and exercising *ex officio* jurisdiction as United States Commissioners in that part of the state formerly known as Indian Territory, that may be in the hands of the clerks of the various district courts of that portion of the state may, including probate matters, by any person having a substantial interest therein, on petition verified by the affidavit of the applicant or his attorneys of record, filed with the judge or clerk of the court where such cause is pending within sixty days after the passage and approval of this act, be transferred to the proper courts of such county or district, and that all books, records, pending cases, papers, proceedings, liens, judgments and executions pending in a justice of the peace court of any county are hereby transferred to some justice of the peace court of the county in which if originally brought in said court, the defendant lives, or if the defendant be a nonresident, then to the county where the plaintiff lives, or the defendant has property, and when such records are transferred as above provided for, said court shall have full and complete jurisdiction of all cases and proceedings so transferred."

Again, the Legislature of Oklahoma provided by Sess. Laws 1910, c. 25, p. 37, as follows:

"Section 1.  When it is made to appear that any probate matter pending in any court of this state which, by acts of Congress and the Constitution, was transferred from the courts of the territory of Oklahoma and the United States Courts in the Indian Territory to the courts of this state, is not in the county where the venue of such suit, matter or proceeding would lie if

arising after the admission of this state into the Union, the court where such suit, matter or proceeding is pending shall, upon the application of the guardian, executor or administrator, or any other person having a substantial interest therein, or upon his own motion, when a proper showing has been made for a removal, within twenty days after application is made therefor, make an order transferring such suit, matter or proceeding to the county where the venue would properly lie if such suit, matter or proceeding had arisen since the admission of this state into the Union, by transmitting to such county the original papers, together with certified copy of all orders and judgments, upon the payment of all accrued costs.

"Section 2. All transfers of records, suits or proceedings of a probate nature which, by acts of Congress and the Constitution, were transferred from the territory of Oklahoma and the United States Courts in the Indian Territory to the courts of this state, and thereafter transferred to another county, where such county would have been the proper venue for such suit, matter or proceeding, been commenced after the admission of such state into the Union, be and the same are hereby legalized, and no sale or other proceeding by the court to which such suit, matter or proceeding has been transferred shall be void because of such transfer."

By this legislation the cause before us was transferred from the United States Court of the Western District, Ind., T., sitting at Wewoka, to the county court of Hughes county, and the same was pending in said last-named court when the remedial statute of 1910 (chapter 25, p. 37) was passed.

Under section 19 of the Enabling Act (Act June 16, 1906, c. 3335, 34 St. at L. pt. 1, p. 277), it is provided:

"That the courts of original jurisdiction of such state shall be deemed to be the successor of all courts of original jurisdiction of said territories and as such shall take and retain custody of all records, dockets, journals, and files of such courts except in causes transferred therefrom, as herein provided."

Section 3 of the Act of Congress approved March 4, 1907 (34 St. at L. 287, c. 2911), provides:

"That all causes, proceedings, and matters, civil or criminal, pending in the district courts of Oklahoma Territory, or in the United States Courts, in the Indian Territory, at the time said territories become a state, not transferred to the United States Circuit or District Courts in the state of Oklahoma, shall be pro-

ceeded with, held, and determined by the courts of said state, the successors of said district courts of the territory of Oklahoma.   *   *   * "

It was the intention of Congress by the provisions of the Enabling Act to have the causes pending in the territorial courts transferred from those courts of original jurisdictions to the state courts of original jurisdictions.  The district court of Seminole county did not have original jurisdiction in probate matters, but only appellate jurisdiction, and had no authority to continue to administer upon matters arising in this cause, except as the same might come into that court by appeal from the county court.  Section 2 of the act of the Legislature of June 4, 1907 (Sess. Laws 1907-08, p. 284, c. 27, art. 1), provides:  "An act to define the jurisdiction and duties of county court, and to fix compensation for the judges thereof," etc., providing that "the county court, coextensive with the county, shall have original jurisdiction in all probate matters."  This last act is merely declaratory of section 12, art. 7, of the Constitution, which confers original jurisdiction in all probate matters upon the county court, and, as in probate matters the county court of the state corresponds in original jurisdiction to the United States Courts of the Indian Territory, they became, as to all probate matters, the successor of the United States Court.

Whether the proper proceedings were taken to transfer this cause to the county court of Hughes county or not is immaterial, as the Legislature of 1910 legalized all transfers of records of a probate nature which were transferred from the United States Court in the Indian Territory to the courts of this state.  This case was pending in the county court of Hughes county when the remedial legislation was passed.

Hughes county, Okla., being the proper venue for the probate of the will of Mongy McGirth, deceased, and the cause having been transferred to that court, and the transfer legalized, we think that the petition to set aside the probate of the will was filed in the right court, and that no other court in the state had jurisdicion to try said cause.  While the exact question has not been decided by our courts before, yet the theory has

been well advanced in the following cases: *Eaves v. Mullen,* 25 Okla. 679, 107 Pac. 433; *MaHarry v. Eatman,* 29 Okla. 46, 116 Pac. 935; *Burdett v. Burdett,* 26 Okla. 416, 109 Pac. 922, 35 L. R. A. (N. S.) 964. In the last case the court says:

"That the county court of McIntosh county was the successor in matters probate pending in the United States Court for the Indian Territory, Western District, on the advent of statehood, we consider no longer an open question in this jurisdiction, having been squarely passed on by this court in *Eaves v. Mullen,*" *supra.*

The next ground of the demurrer is that "the petition does not state facts sufficient to constitute a cause of action, in that it is nowhere alleged that the matter set up in the said petition as grounds for revocation of the said will consist of or are based upon evidence discovered since the probate of the said will, and for the further reason that it affirmatively appears from the face of the said petition that more than one year elapsed between the probate of the said will and the filing of the petition for revocation, and that Lena McGirth has not yet reached her majority." We think that the trial court properly overruled this section of the demurrer. The statute provides (section 5166, Comp. Laws 1909 [Rev. Laws 1910, sec. 6219]):

"When a will has been admitted to probate, any person interested therein may at any time within one year after such probate, contest the same or the validity of the will. For that purpose he must file in the court in which the will was proved a sworn petition in writing containing his allegations, that evidence discovered since the probate of the will, the material facts of which must be set forth, shows: 1. That a will of a later date than the one proved by the decedent, revoking or changing the former will, has been discovered, and is offered; or, 2. That some jurisdictional fact was wanting in the former probate; or, 3. That the testator was not competent, free from duress, menace, fraud, or undue influence when the will allowed was made; or, 4. That the former will was not duly executed and attested."

The foregoing section must be construed in connection with section 5172, Comp. Laws 1909 (Rev. Laws 1910, sec. 6225), when applied to infants and persons of unsound mind:

"Section 5172: If no person, within one year after the probate of a will, contests the same or the validity thereof, the pro-

bate of the will is conclusive, saving to infants and persons of unsound mind, a like period of one year after their respective disabilities are removed."

Sections 5166 and 5172, *supra,* must be read and construed together, and when so read and construed it seems clear that the latter section relieves an infant of the diligence required of adults under section 5166, *supra,* to contest the probate of a will within one year, or to show that the evidence relied upon was discovered since the probate of the will. In other words, section 5172, *supra,* gives an infant a right to contest the probate of a will upon either or all of the four grounds specified in said section 5166, *supra,* free from conditions precedent in respect to diligence specified in said last section. The defendant in error has complied fully with sections 516 and 5172, *supra,* having set forth in writing the material allegations complained of, and that the testator was not competent, free from duress, menace, fraud or undue influence, when the will was made, and that the will was not duly executed and attested.

In the case of *Powell v. Koehler,* 52 Ohio St. 119, 39 N. E. 196, 26 L. R. A. 483, 49 Am. St. Rep. 708, the Supreme Court of Ohio says:

"Persons within the saving provisions of the statute are not precluded from suing while the disability lasts. The time within which they may sue is simply extended for a definite period after the disability ceases, and when it ceases they stand upon the same footing as other persons. The statute begins to run against them from that time, and, once started, nothing can prevent the bar but suit brought within the prescribed period. The rule which is generally maintained in this country was announced by Lord Talbot, in *Belch v. Harvey,* 3 P. Wms. 287, note, in the following language: 'The persons who are the subject of the proviso are not disabled from suing; they are only excused from the necessity of doing it during the continuance of the legal impediment; therefore, when that difficulty is removed, the time allowed for their further proceeding should be shortened. If they would excuse a neglect under the first part of the proviso, should they not do it upon the terms on which such excuse was given?' "

In the case of *Whirley v. Whiteman,* 38 Tenn. (1 Head) 610, it is said:

Scott et al. v. McGirth.

"A person injured when three years of age may elect to sue by *prochein ami* at any time during minority, or alone within a year after majority."

See, also, *Mo. P. Ry. Co. v. Cooper,* 57 Kan. 188, 45 Pac. 587; *Tinsley v. Pitts,* 10 Kan. App. 321, 69 Pac. 536; 3 Bates on Pleading, p. 2966; *Samson v. Samson,* 64 Cal. 327, 30 Pac. 979.

The plaintiffs in error have relied for a construction of section 5172, *supra,* on the case of *Holland v. Beaver,* 29 Okla. 115, 116 Pac. 766, Ann. Cas. 1913A, 814, which was a case construing section 6082, Comp. Laws 1909 (Rev. Laws 1910, sec. 5255). This case is not applicable to the one at bar, as the section under consideration in that case specifically excluded the time of such disability within which the infant could institute the proceedings under that section, while section 5172, *supra,* does not contain such limitation.

Under this same section of the demurrer it is contended that it affirmatively appears from the face of the petition that more than one year has elapsed between the probate of the will and the filing of the petition for revocation. This question was disposed of under the first section of this clause of the demurrer; we desire to say in addition, however, that the record does not show the date when the will was probated, nor does it show when the petition to set aside the ·probate of the will was filed in the county court of Hughes county, and, even if we desired to consider this question further, we could not do so under the condition of the record.

The last question raised by the demurrer is that the petition does not state facts sufficient to constitute a cause of action. This searches the entire petition, and, if the petition states one sufficient ground for relief, the demurrer should be overruled. We are satisfied from an examination of the petition that the contestant has come within subdivisions 3 and 4 of section 5166, Comp. Laws 1909 (Rev. Laws 1910, sec. 6219):

"3. That the testator was not competent, free from duress, menace, fraud or undue influence when the will allowed was made; or, 4. That the former will was not duly executed and attested."

The petition shows that Mongy McGirth was a full-blood Creek Indian, and left surviving him a widow and one child; that the will was made disinheriting the wife, and leaving but a very small portion of his property to his only child, and it left the bulk of the estate to Evans Scott and Alexander M. Butts, strangers to him in blood, who were occupying towards the deceased at the time the confidential relation of physician and patient, and, while occupying this confidential relation, and while the said Mongy McGirth was on his death bed, and *in extremis*, and wholly lacking in testamentary capacity, procured the said will, which they made and prepared of their own volition and suggestion, disinheriting the said wife, and leaving but a small portion of his property to Lena McGirth, his only child, and that said will was not read over to the deceased, nor could he either talk or understand English, nor had he any knowledge whatever of the contents of the said will—all of which constitutes a sufficient allegation to come within subdivision 3 of section 5166, *supra;* that the deceased was not competent, free from duress, menace, fraud, or undue influence when the said will was executed. *Estate of Crozier,* 65 Cal. 19, 4 Pac. 412.

The allegation in plaintiff's petition that said pretended will was not executed in accordance with the laws then in force in the Indian Territory as to the making and execution of wills, and could not vest any rights of property in the devisees therein named, is a sufficient allegation under subdivision 4 of section 5166, *supra.*

"In a bill contesting the validity of a will an allegation 'that said will was not duly executed' is sufficient." (*Barksdale et al. v. Davis et al.,* 114 Ala. 623, 22 South. 17.)

The other point raised by plaintiffs in error is that the petition was not signed or verified as required by section 5166, *supra.* We cannot agree with plaintiffs in error on this question. Had they filed a motion to strike the petition for the want of signature or verification, the same no doubt would have been sustained by the trial court; but they did not elect to do so, but filed a general demurrer, which does not raise this question. The question as to the signing and verification of a petition can-

not be raised for the first time on appeal in this court. *Warner v. Warner*, 11 Kan. 122; *Gilmore v. Hempstead*, 4 How. Prac. (N. Y.) 153; *Fritz v. Barnes et al.*, 6 Neb. 435; *Toledo Agricultural Works v. Work*, 70 Ind. 253; *State ex rel. Ruhlman v. Ruhlman, Executrix*, 111 Ind. 17, 11 N. E. 793; *Payne, Hunnington & Co. v. Flourney*, 29 Ark. 500; 8 Ency. Pleading and Practice, 206.

There being no error, the case should be affirmed.

By the Court: It is so ordered.