C. C. ROBERTS, Executor of the Estate of William H. Pipestem, deceased, Plaintiff in Error,

v.

L. R. STITH and Charles R. Gray, Defendants in Error.

No. 39339.

Supreme Court of Oklahoma.

March 26, 1963.

Rehearing Denied May 21, 1963.

Application for Leave to File Second Petition for Rehearing Denied June 18, 1963.

Emerson R. Phillips, Pawnee, and Elliott Howe, Tulsa, for plaintiff in error.

Patrick A. Williams, Pawhuska, for defendants in error.

BERRY, Justice.

William H. Pipestem, now deceased, will be referred to herein as "plaintiff" and defendants in error, L. R. Stith and Charles R. Gray, will be referred to as "defendants".

Pearl McKinley, an Osage Indian, died in 1946. As of date of her death the value of her estate was approximately $250,000.00. The estate was probated in Osage County, Oklahoma.

Plaintiff, who was a full-blood Otoe Indian, asserted an interest in the estate as Pearl McKinley's common-law husband, which claim was disputed by others who claimed to be Pearl McKinley's sole heirs at law. As a result of the dispute, plaintiff employed defendants who were then and now are licensed to practice law in this State, to prosecute the mentioned claim.

As evidence by several written contracts of employment which plaintiff and defendants entered into, defendants' compensation was wholly contingent upon plaintiff's establishing that as of date of Pearl McKinley's death he was her common-law husband. If the claim were established, defendants' compensation was to be one-third of that portion of the estate which would be distributed to plaintiff as Pearl McKinley's common-law husband.

Litigation concerning plaintiff's claim was terminated by a settlement. As a result of the settlement, a substantial portion of the estate was distributed to plaintiff. Among the property so distributed was some 1800 acres of land lying in Osage County and 1 and 383/432nds Osage headrights.

Thereafter plaintiff and defendants entered into a settlement agreement by the terms of which plaintiff was to convey to defendants as their agreed compensation the above mentioned land. In so far as material, it was stated in the agreement that the value of the properties recovered by plaintiff as a result of the claim he made against the estate was $102,409.15; that the value of the land was $30,000.00; that defendants' agreed compensation was $34,136.12; that defendants were also entitled to recover $1,191.20 incurred as expenses in conducting the litigation; that in full satisfaction of defendants' claim plaintiff would convey to them the land. This agreement was reduced to writing and executed by the parties on March 5, 1952.

Prior to the last mentioned agreement being reduced to writing, plaintiff on February 27, 1952, executed a deed conveying to defendants the land.

On October 13, 1958, the instant action was instituted. In so far as material, it was alleged in the petition that at the time of the conveyance the land was of the reasonable value of $200,000.00; that defendants therefore received much more than one-third of the fruits of the litigation that they had conducted for plaintiff; that a fiduciary relationship existed between plaintiff and defendants at the time the settlement agreement was reached and conveyance was made; that plaintiff was then and for many years had been an habitual drunkard; that he was then and thereafter remained mentally incompetent; that he was untutored; that his mental condition was such that he was not competent to make or execute either the settlement agreement or conveyance.

In their answer defendants admitted execution of the contracts of employment and of the deed which were alleged to be valid. They denied all allegations of fraud or misconduct on their part and alleged that the value of the land as of date of plaintiff's conveyance to them was less than the value of one-third of the properties transferred to plaintiff by virtue of the litigation which they conducted on his behalf. As an affirmative defense, they pleaded that plaintiff's action, which was instituted more than 6 years following execution of the settlement agreement and deed, was barred by limitations and that plaintiff was estopped to maintain the action.

Plaintiff filed a reply in which the allegations of defendants' answer were denied.

Following trial of case to the court, rather extensive findings of fact and conclusions of law were made upon which judgment was entered for defendants.

From order denying plaintiff's motion for new trial which was directed to the judgment, he perfected this appeal.

In so far as material, the trial court found in substance that from the year 1947 to and including March 5, 1952 plaintiff was a "chronic alcoholic" but was nevertheless mentally competent to enter into the settlement agreement that he entered into with defendants and to make the conveyance in controversy; that the instant action was instituted more than six years following execution of the settlement agreement and deed; that plaintiff's mental condition was not such as to toll the statute of limitations; that the action was barred by limitations; that for said reason no finding was made or conclusion reached as to the alleged fraud of defendants.

The basic issue posed is whether the trial court's finding and conclusion to the effect that plaintiff's mental condition was not such as to toll the statute of limitations is against the clear weight of the evidence.

There was competent evidence showing that following World War II, plaintiff became an alcoholic; that he would drink almost any beverage containing alcohol; that he was convicted of drunkenness time after time; that he spent a great deal of his time in jail awaiting trial on charges of being drunk or in satisfying sentences imposed on such charges. In fact, as heretofore pointed out, the trial court found that plaintiff at and prior to executing the settlement agreement and deed was a chronic alcoholic.

There was also competent evidence that plaintiff could read and write; that he was a member of the Armed Forces of this country during the last world war; that he reached the rank of sergeant; that he owned land in Osage County; that he was as intelligent as the average person (a qualified doctor so testified); that he understood the nature and purpose of a deed; that he understood in a general way the nature and basis of the claim that he made against Pearl McKinley's estate; that plaintiff was not under the influence of intoxicating liquor at the time he executed the settlement agreement and deed. We add, that a person whom plaintiff's guardian called as witness testified that plaintiff was not ignorant, and other witnesses that plaintiff called testified that plaintiff was neither an idiot, lunatic nor imbecile. Plaintiff did not testify.

Plaintiff stresses that on May 22, 1957, a guardian was appointed of the person and estate of plaintiff who was referred to in the order as "an incompetent". No finding was made in the order as to plaintiff's mental condition or competency. This order did not constitute a finding or adjudication that plaintiff, as of date thereof was mentally incompetent. See In re Nitey's Estate, 175 Okl. 389, 53 P.2d 215.

Plaintiff argues, as we understand his argument, that the finding on the part of the trial court that plaintiff was a chronic alcoholic required a further finding that plaintiff was in fact mentally incompetent to execute either the settlement agreement or deed and judgment should therefore have been entered cancelling and setting aside the instruments.

In support of the foregoing argument plaintiff cites Kendall v. Ewert, 259 U.S. 139, 42 S.Ct. 444, 66 L.Ed. 862, where it was held in substance that common drunkards are not competent to transact business; that where it is shown that an Indian grantor was a common drunkard, evidence as to his competency at the time the deed in question was executed must be clear in order to sustain the validity thereof.

A review of the record in the instant case shows that there was an abundance of competent evidence overcoming any presumption that plaintiff's addiction to intoxicating liquor rendered him mentally incompetent to execute the instruments in controversy. Moreover, the basic issue before us is whether plaintiff's mental condition at

**18**

relevant times was such as to toll limitations. Kendall v. Ewert, supra, does not bear directly on this proposition.

The statute, bearing upon the last mentioned proposition is 12 O.S.1961 § 94, which reads thusly:

"Any person entitled to bring an action for the recovery of real property, who may be under any legal disability when the cause of action accrues, may bring his action within two years after the disability is removed."

At p. 965 of annotated notes beginning at p. 964, 9 A.L.R.2d, it is said that "Generally, it seems that a person may be under the legal disability of insanity, or unsoundness of mind, within the meaning of the exception to the statute of limitations, when the disability is of such a nature as to show him unable to manage his business affairs or estate, or to comprehend his legal rights or liabilities."

In the body of the opinion to Bumpass v. Stone et al., 190 Okl. 486, 125 P.2d 755, 756, this was said:

" * * * In Scott v. Scott, 131 Okl. 144, 268 P. 245, 247, it is stated: 'The test of capacity to make a deed is that the grantor should have the ability to understand the nature and effect of the act in which he is engaged, and the business he is transacting. He may be old; he may be enfeebled by disease; he may be erratic, irritable, and changeable in his views; he even may be irrational upon some topics, but, in the absence of fraud, he may still execute a valid deed.' "

If plaintiff's mental condition at the time he entered into the settlement agreement and executed the deed was such that he understood the nature and purpose of said instruments and the legal effect of his executing same, he was not then under a "legal disability" within the purview of Sec. 94, supra, and the applicable statute of limitations which is less than six years was not tolled.

 As heretofore pointed out, under the trial court's findings plaintiff was not under a legal disability at the time he executed the settlement agreement or deed, which findings are supported by competent evidence and are not clearly against the weight of the evidence. It follows, that the trial court did not err in finding and concluding that plaintiff's action was barred by limitations.

Affirmed.

BLACKBIRD, C. J., HALLEY, V. C. J., and JACKSON and IRWIN, JJ., concur.

WELCH, JOHNSON and WILLIAMS, JJ., dissent.